UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARAM KARAPETYAN (A#244-545-322),<br>Petitioner,<br>v.<br>TODD BLANCHE, et al,<br>Respondents. | No. 1:26-cv-08716-TLN-SCR<br><br>FINDINGS & RECOMMENDATIONS |

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241. This matter was referred to the undersigned by operation of Local Rule 302 and 28 U.S.C. § 636(b)(1).

**I. Factual and Procedural History**

The instant action arises from Petitioner's civil immigration detention without notice or hearing. See ECF No. 1. Petitioner is a citizen of Armenia. Id. He applied for entry into the United States with his wife and son at the U.S.-Mexico border on or about May 21, 2024, using the CBP One application. ECF No. 8 at 10. Immigration officials granted him humanitarian parole, allowed him to enter the United States, and served an I-862 Notice to Appear ("NTA") charging him as inadmissible under I.N.A. § 212(a)(7)(A)(i)(I). Id. at 11. The NTA ordered Petitioner to appear before an immigration judge ("IJ") on July 1, 2024. Petitioner states that he "has appeared for all court hearings before the immigration court" (ECF No. 1 at 11); while the

record is unclear as to exactly when and if Petitioner has had a hearing before an IJ, Respondents do not dispute the assertion. Petitioner states that he timely filed a Form I-589 application for asylum, withholding of removal, and protection under the Convention Against Torture with the immigration court and filed an amended application on or about December 4, 2025. ECF No. 1 at 5, 27.

According to the record, Petitioner does not have a criminal history in the United States. ECF No. 8 at 15. On October 21, 2026, Immigration and Customs Enforcement ("ICE") officers arrested him outside his residence. ECF No. 8 at 14. They did not provide him a pre-deprivation hearing or a bond hearing, and the EOIR system shows no an upcoming hearing calendared before an IJ.

Petitioner is detained in the California City Immigration Processing Center, within this judicial district. On October 22, 2026, Petitioner filed petition for Writ of Habeas Corpus challenging the lawfulness of his civil detention seeking immediate release. ECF No. 1. On November 2, 2026, Respondents filed an opposition and requested the Court rule on the Petition in its entirety without additional documentation. ECF No. 8. On November 3, 2026 Petitioner replied and joined that request. ECF No. 9.

## II. STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

## III. ANALYSIS

Petitioner claims his detention violates the Fifth Amendment Due Process Clause. ECF No. 1 at 9–10.[1] The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; Hernandez v. Sessions, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. Zadvydas, 533 U.S. at 693. These due process rights extend to immigration proceedings and detention. Id. at 693–94. Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

### 1. Liberty Interest

"[F]reedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" Hernandez, 872 F.3d at 993 (citing Foucha v. Louisiana, 504 U.S. 71, 80 (1992)). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." See Rico-Tapia v. Smith, No. 25-CV00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025). Liberty interest may be strengthened over time. See, e.g., Doe v. Becerra, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

Petitioner has a clear liberty interest here, having been lawfully paroled into the country over two years ago. See Rico-Tapia v. Smith, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process

[1] In the interests of judicial economy, the remaining three claims in the § 2241 petition are not addressed herein.

Clause"). Moreover, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release].'" Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (quoting Morrissey, 408 U.S. at 482) (modifications in original); see also Salcedo Aceros v. Kaiser, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025) ("[A] noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody.").

In opposition, Respondents argue Petitioner has no right to freedom because his detention is mandated by statute, 8 U.S.C. § 1225(b). ECF No. 8 at 2. However, as this case illustrates, humanitarian parole under 8 U.S.C. § 1182(d)(5)(A) provides a basis for release of someone detained under § 1225(b). As occurred in Petitioner's case, the Department of Homeland Security ("DHS") may temporarily grant parole to a non-citizen on a case-by-case basis, where either "urgent humanitarian reasons" or a "significant public benefit" justify their parole, and the non-citizen "present[s] neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b). Courts in this district and across the Ninth Circuit routinely find that individuals who have been paroled into the United States under § 1182(d)(5)(A) have a clear interest in remaining out of custody that is protected by the Fifth Amendment. See Chavarria v. Chestnut, No. 1:25-CV-01755-DAD-AC, 2025 WL 3533606, at *3 (E.D. Cal. Dec. 9, 2025) (collecting cases). Petitioner's liberty interest does not evaporate when a term of parole expires. See Caisa Telenchana v. Hermosillo, No. 2:26-CV-00363, 2026 WL 696806, at *7 (W.D. Wash. Mar. 12, 2026) (internal citations omitted) (citing 8 C.F.R. § 212.5(e)(2)(i)). With a protectable liberty interest, the Court next turns to the procedural safeguards that were owed to Petitioner.

**2. Procedural Requirements**

To determine what procedures or process is due, the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute

procedural requirement would entail." Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by Respondents' actions detaining him. Despite his interest in maintaining his liberty, Petitioner has been detained for over a month month without any opportunity to be heard as to the justification of his detention. Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. See Manzanarez v. Bondi, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any process, either pre- or post-detention. Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest in order for detention to comport with due process. Zadvydas, 533 U.S. at 690. Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." Hernandez, 872 F.3d at 994. Here, Petitioner is not subject to any order of removal; his immigration proceedings are still pending. The Form I-213 provided by Respondents indicates that he has never been convicted of a crime. ECF No. 8 at 15. Moreover, Respondents do not contend that Petitioner is a danger or a flight risk. Indeed, immigration authorities found that Petitioner was not a danger or a flight risk to when they paroled him in 2024. See 8 C.F.R. § 212.5(b). Respondents do not point to any changed circumstances, while Petitioner established over two years of compliance. Without any showing of a legitimate interest to detain Petitioner, the Court finds there is a serious likelihood Petitioner was erroneously deprived of his liberty interest. The probative value of additional procedural safeguards is high and this factor weighs sharply in favor of Petitioner. R.D.T.M. v. Wofford, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *4.

Finally, the government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. See Garcia v. Andrews, No. 2:25-CV-01884-

TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). Although the Court recognizes the government's general interest in immigration enforcement, that interest does not outweigh all procedural safeguards. Any delay in detention (if justified) for the time to provide notice and a hearing would have been minimal. And if Petitioner does not pose a meaningful risk of flight, it would also be less of a fiscal and administrative burden for Respondents to return Petitioner home to await a determination on his immigration proceedings than to continue to detain him. See Diaz v. Kaiser, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T]he Ninth Circuit has recognized that the costs to the public of immigration detention are staggering.").

Due process required Respondents to provide notice and a pre-deprivation hearing. The United States Supreme Court "usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty or property." Zinermon v. Burch, 494 U.S. 113, 127 (1990) (emphasis in original). Post-deprivation remedies as the "special case" where those are "the only remedies the State could be expected to provide." Id. at 129. Respondents have not provided any substantive opposition to the contrary, nor do they argue that Petitioner should be a "special case," nor do they supply a justification for Petitioner's detention. See generally ECF No. 8.

Yet, Petitioner was not provided any notice, nor was he given a pre- or post-deprivation hearing since he was detained one month ago. Therefore, Respondents violated the Fifth Amendment and Petitioner's procedural due process rights.

## IV. CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus be GRANTED as follows:
   a. Respondents shall IMMEDIATELY RELEASE Petitioner Aram Karapetyan (A# 244-545-322) from custody. At the time of release, Respondents must return all of Petitioner's documents and possessions.
   b. Respondents are ENJOINED from re-detaining Petitioner absent compliance with statutory and constitutional protections, including a minimum of seven-days' notice and a pre-deprivation hearing before a neutral factfinder where Respondents

show by clear and convincing evidence that the government's interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner’s constitutionally protected interest in remaining free from detention such that no alternative to detention can mitigate that risk.

2. The Clerk be directed to:

   a. Serve the California City Processing Facility with a copy of this Order; and

   b. Enter judgment in Petitioner’s favor and close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **three days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court’s order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: November 23, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE